THE AMERICAN LIFE INSURANCE COMPANY v. ZENORA F. MAHONE AND HUSBAND.

1. INSURANCE.    *Proof of death.    Waiver thereof pleaded and proven.*

In an action on a life insurance policy, where the declaration avers "that the plaintiff made satisfactory proof of the death of the insured to the defendant, according to the terms and conditions of the policy, and gave the defendant due notice of his decease," the plaintiff may prove, under such averment,

that the defendant accepted defective proof of the death of the insured, or waived any fuller proof than was made; and if there is evidence tending to prove such acceptance or waiver, the question may properly be left to the jury.

2. SAME.  *Defective proof of death.  Duty of insurers.  Defect waived.*

Where an insurance company receives defective proof of the death of one insured, good faith requires that the company shall promptly give notice to the beneficiary in the policy, indicating the defect and what must be supplied, and the failure of the company to do so operates as a waiver of the defect.

3. SAME.  *Defective proof of death.  How accepted, or waived.*

The failure of an insurance company to object to defective proof of the death of one insured, or a refusal to pay the policy, based upon grounds other than such defect, is regarded as an acceptance of the defective proof, and a waiver of the defect.

4. SAME.  *Application.  Answers incorrectly written by agent.*

If the agent of an insurance company undertakes the preparation of an application for insurance in his company, and, by mistake or omission, fails to write down correctly the applicant's answer to a question propounded, the company will be bound by such answer, just as if it had been written down in the language used by the applicant, and presented thus to the company for its action.  *Planters' Ins. Co. v. Meyers,* 55 Miss. 479, approved.

5. SAME.  *Refusal of applicant to answer a question.  Effect on policy.*

The absolute refusal of an applicant for insurance to answer a question propounded by the agent of the insurance company cannot be regarded as a wilful or fraudulent concealment, for the company is advised that the applicant declines to answer altogether; and if the risk is taken in such case, the policy cannot be avoided because of such refusal, but the company will be treated as having agreed with the insured to insure his life without the information sought by the unanswered question.  And it can make no difference whether such question is propounded separately, or in connection with another or others.

6. SAME.  *Answer of applicant.  Concealment.*

That character of concealment, in the answer of an applicant for insurance to a question propounded by the agent of the insurance company, which would vitiate the policy must be such as to mislead or deceive the insurers.

7. SAME.  *Refusal of applicant to answer.  Case in judgment.*

An applicant for insurance was called upon by the agent of the insurance company to answer the following question: "Has a proposal been made for insuring the life in this or any other office, and if so, whether accepted or declined?  If insured, state in what company, and for what amount?"  The latter inquiry was answered; but the former, as to a proposal for other insurance, was not answered in any manner.  *Held,* that the omission to answer one branch of the question entirely was not a fraudulent concealment.

8. JUROR. *His qualifications.*
    It is not a good cause for challenging a juror, in this State, that he cannot read
      or write. Sect. 724 of the Code of 1871 prescribes the qualifications of a
      juror, and it does not require any educational qualification.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

In November, 1876, Zenora F. Mahone and her husband, W. C. D. Mahone, commenced an action of attachment against the American Life Insurance Company, of the city of Philadelphia, to recover the sum of $5,000 on a policy of insurance issued upon the life of Leonidas Dillard for the benefit of Mrs. Mahone. The defendant pleaded in abatement. A jury was waived, and the issue was tried by the court and found for the plaintiffs. The plea in abatement, and the evidence adduced on the trial thereof, are substantially set forth in the opinion of the court.

The declaration averred, as to the proof of death, "that the plaintiffs made satisfactory proof of the death of said Leonidas Dillard to said company, according to the terms and conditions of said policy, and gave them due notice of the decease of said Dillard." The conditions of the policy required, amongst other proofs of death, the following : —

"1. A certificate of the physician who attended the insured in his last illness, stating particularly the nature of the disease, its duration, and the date and hour of decease; his apparent age, height, complexion, and general appearance.

"2. The certificate of a friend or intimate acquaintance, stating the disease of which the party died, how long he was sick, a knowledge of such death, and how obtained, and the time of death."

The proof of death offered in evidence by the plaintiffs contained the following as the physician's certificate : —

"ATTENDING PHYSICIAN'S STATEMENT.

"Name of the deceased, Leonidas Dillard; residence, Hinds County, Mississippi; occupation, farmer.

"Were you his attending physician?—I was sent for on the after-

noon of the 4th of November, and on reaching the house I found Mr. Dillard dead.

"If death ensued from disease, state its proximate and remote cause; if in any other manner, give the medical and other facts connected with the case.—I do not know the cause of his death.

"State the duration of his sickness.—About two days.

"State the date and hour of decease.—November 4, 1870, about 4 o'clock, P.M.

"State his apparent age, height, complexion, and general appearance.—About 31; 5 feet 7 inches, about; fair complexion; healthy appearance."

The proofs of death did not contain any certificate of a friend or acquaintance of the deceased. The defendant objected to the admission of the proofs of death in evidence as notice to the company, on the ground that they did not show the cause of the death, as required by the conditions of the policy, and as averred in the declaration. W. C. D. Mahone testified that he filled out the proofs of death, which were printed forms, and gave them to the local agent of the company, to be forwarded to the defendant, and that he never received any notice from the defendant or any of its agents that such proofs were defective or unsatisfactory. The defendant moved to exclude from the jury all the evidence as to the proof of death, on the following grounds: (1) It did not show that notice of the cause of the death was given according to the conditions of the policy; (2) under the averments of the declaration, it was incompetent to prove a waiver of the conditions of the policy by the defendants; and (3) the proof was not sufficient to prove such waiver. The motion was overruled.

The fifteenth question in Dillard's proposal for insurance, with his answer thereto, was as follows: —

*Question.* — "Has a proposal been made for insuring the life in this or any other office, and if so, whether accepted or declined? If insured, state in what company, and for what amount? *Answer.* — Insured in Equitable; $5,000."

The defendant objected to four of the jurors who tried the

case, on the ground that they could not read or write. The objection was overruled.

The other material facts of the case will be found in the opinion of the court.

*A. H. Handy*, for the plaintiff in error.

1. The court erred in the finding and judgment on the plea in abatement. The evidence showed that at the time the attachment was issued the defendant therein had an agent in this State, upon whom process might be served.

2. Dillard was required to state, in answer to the fifteenth question propounded to him, what applications he had made for insurance, and also in what companies he was insured. It was not sufficient to answer that he had been insured in the Equitable. He suppressed the fact that he had made proposals, which had been rejected. Bliss on Ins. 73, sect. 52. The matter inquired of by the fifteenth question was material to the defendant's action on Dillard's application. The warranty was that the answer should be full and fair. Bliss on Ins. 98, sect. 72. And it must have been strictly and literally true. May on Ins., sect. 183. And that is so, whether the matter inquired of was material or not. Bliss on Ins., sect. 37. The suppression of the fact that applications for insurance in other companies had been made and rejected avoids this policy. Bliss on Ins. 91, 178–180, sect. 134 *et seq.;* May on Ins. 437, sect. 364; *Planters' Ins. Co.* v. *Myers,* 55 Miss. 479.

3. The court should have sustained the motion of the defendant below to exclude from the jury the proofs of Dillard's death; because, (1) the proofs were not sufficient, of themselves, to show the cause of the death; (2) under the issue made by the pleadings, which was a special averment of the performance of a condition precedent, and a special denial of it, it was not competent to show a waiver; and (3) the proof offered to show the waiver did not sustain it. *Fultz* v. *House,* 6 Smed. & M. 404, 410. And see, upon an analogous point, Byles on Bills (ed. 1867), 409.

4. It is true that persons who cannot read or write are not made incompetent for jurors by sect. 724 of the Code of 1871, but reason and the ends of justice make other persons than those enumerated incompetent as jurors in a case of so much magnitude and difficulty as this. A man blind, deaf, lunatic, or *non compos mentis*, is a " male citizen," as required by the statute ; but it would be abhorrent to all justice to permit such persons to sit on the trial of a cause requiring the use of faculties of which they are destitute. And, for the same reason, a man who cannot read or write should be incompetent for a juror in a case requiring such capacity. Under our statutes, a juror may be challenged for any cause which unfits him to perform his duty.    Code 1871, sect. 634.

*A. H. Handy* also argued the case orally.

*Shelton & Lea* and *M. Green*, for the defendants in error.

1. The finding of the court on the plea in abatement stands on the same footing with a verdict of a jury, as to the facts, and will not be disturbed, though the evidence may preponderate against it (which we deny), if there be evidence legally conducing to the conclusion reached.    But the defendant below had no agent in this State, at the time the attachment was issued, upon whom process could be served so as to bind her.    Code 1871, sects. 2442, 2445, 2453; Story on Ag., sects. 481, 499 ; Whart. on Ag., p. 97, sect. 96, note 4. And if the defendant had had such agent, the affidavit for attachment was based on facts derived from the defendant, fully justifying it, and which on the trial she was estopped to deny.    See *Cocke* v. *Kuykendall*, 41 Miss. 65 ; Laws 1874, p. 16.

2. The failure of Dillard to answer the fifteenth question, as to proposals for insurance, did not avoid the policy. Such concealments, unless wilful, and made with the intention to deceive, will not avoid a policy.    The insurance company propounded the question, and only a part of it was answered. She accepted that part as a full answer.    The company

issued the policy knowing that the first branch of the question had not been answered; and now, after the loss, she is estopped to say that the answer was concealed, when it was patent that no answer at all was given. 5 Lans. 275. But the application for insurance was prepared by the company's agent, and "both questions and answers must be regarded as the act of the company." *Life Ins. Co.* v. *Mahone*, 21 Wall. 152. See also *Planters' Ins. Co.* v. *Myers*, 55 Miss. 479.

3. The proofs of death offered in evidence by the plaintiffs below were properly submitted to the jury, in connection with the other evidence in the case. May on Ins., sect. 268; 9 Blatchf. 241; *Spratly* v. *Hartford Ins. Co.*, 1 Dill. 392; *Davis, Hackett & Co.* v. *Western Massachusetts Ins. Co.*, 8 R. I. 277; *Madsden* v. *Phœnix Ins. Co.*, 1 S. C. 24; *Home Ins. Co.* v. *Coker*, 20 Gratt. 312; 56 Me. 371; 64 Me. 500; 73 Pa. St. 13; 2 Ohio St. 452. Waiver of notice is equivalent to actual notice, and is properly provable on the allegation of actual notice. 5 Pick. 443; *Kennon* v. *McRea*, 7 Port. 175; *Taunton Bank* v. *Richardson*, 5 Pick. 436; *Purchase* v. *Mattison*, 6 Duer, 587; Stephen's Pl. 142, note 10.

4. Under the Constitution and laws of our State, every householder is a competent juror, whether he can read and write or not.

*M. Green*, of counsel for the appellees, argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

This suit was begun by attachment against the American Life Insurance Company, a foreign corporation, which, as alleged in the affidavit, has ceased to do business in this State, and has no agent authorized to acknowledge service of process. The defendant, by plea in abatement, traversed the grounds of the affidavit, and averred that, at the time the writ was sued out, Charles Handy, of Canton, was the agent of the defendant, on whom process could have been effectively served. This

issue was found by the court for the plaintiff (a jury having been waived), and on the refusal of the court to award a new trial on the issue, a bill of exceptions was signed.

The substance of Charles Handy's testimony was, that in August, 1873, there was filed in the auditor's office a power of attorney to him, among other things, to accept service of process for the defendant; that he had been agent for defendant from 1869 until September, 1875, when a transfer of the policies issued by the defendant, then in force and held in this State, was made to the Mobile Life Insurance Company. After the discontinuance of business, except for liquidation, Handy continued to represent the defendant, except that he could not receive premiums.   He continued to represent the defendant in winding up business, and his letter of attorney continued in force in that respect.   Since September, 1875, the auditor has issued to him no certificate, as provided in sect. 2442 of Code, nor did he make any statement to the auditor, etc.

W. C. D. Mahone deposed that he was informed, in October, 1876, by William Handy, a brother of Charles Handy, that the defendant had no agent in this State to acknowledge service of process; that before this suit was brought, he went to the auditor's office to see whether there was on file such appointment, and one of the clerks, after examination, reported that there was not.   A circular letter from the home office of defendant, at Philadelphia, dated 15th September, 1875, addressed to the policy-holders in Mississippi, came to the notice of one of the plaintiffs.   That circular stated that all the risks taken by the defendant in Mississippi had been reinsured in the Mobile Life Insurance Company. Those who continue their policies with defendant must remit premiums direct to the home office, at Philadelphia. The defendant's policies can be surrendered, and the policies of the Mobile company taken in exchange.   It then adds: "Charles Handy, Esq., of Canton, Mississippi, now represents

the Mobile Life Insurance Company, and will attend to exchange of policies ; the American has now no agents in Mississippi.''

When William Handy made the statement above, he was acting for the Mobile company, endeavoring to persuade the witness to exchange for a policy in the Mobile company. Handy denies making the statement.

There was a good deal more testimony on both sides.

The finding of the circuit judge was warranted by the testimony. The holders of policies could put, fairly, the construction on the circular letter of 15th September, 1875, that the American Life Insurance Company had ceased to continue business in Mississippi. It required those who would not surrender policies and insure in the Mobile company to pay their premiums in Philadelphia. It had no use longer for agents. It gave notice that Charles Handy, through whom it had done its business as general agent, was *now* agent for the Mobile company, and that it had now no agents in Mississippi. If a policy-holder acted upon the fair and reasonable construction of this paper, the defendant ought not to be allowed to plead, in avoidance of such act, that Charles Handy was still its agent after 15th September, 1875, competent to be served with process.

It is assigned for error that the court did not exclude the proof of Dillard's death. The objection was, that the cause of death was not shown, as required by a condition of the policy. There was also evidence tending to waive fuller proof. After all the testimony was before the jury on the point, the defendant moved to exclude the proofs of the death, because no waiver had been shown, which was overruled.

The proofs did not meet the requirement of the condition, — it did not contain the physician's certificate, nor that of a friend.

Was the waiver shown, and was the testimony of waiver admissible on the pleadings? If the plaintiffs put this part of their case on the ground of waiver, the question was not one

purely of law, — whether the evidence of waiver, in the opinion of the court, amounted to full proof of the fact, — but was there any evidence offered tending to prove it, and of value sufficient to be considered by the jury.

On November 28, 1870, Mahone forwarded the proofs of death. Nothing was heard in reply for some time. Mahone stated that nothing was ever said by the company, or its agent, as to defective proof in this particular, at all. He denies that notice of the requirement of fuller proof was ever given. Charles Handy says that he gave notice ; Mahone says that he did not. The testimony was conflicting, and it was entirely proper to refer the matter to the jury, whose finding would be conclusive.

This would be so, unless the other question made by the defendant was tenable, — that is, that the testimony was not relevant under the pleadings. Good faith is of the essence of the contract. It was incumbent on the insurance company, when the proofs of death were received, to have promptly given notice, indicating the defect and what must be supplied ; a failure to do so will be a waiver of the defect. *Home Ins. Co.* v. *Cohen,* 20 Gratt. 325 ; *McMasters & Brown* v. *Insurance Co.,* 25 Wend. 382 ; 16 Wend. 410 ; 10 Pet. 510. Defective proofs may be accepted by the company. This may arise from the failure to object, or by placing the refusal to pay on other grounds. *Spratly* v. *Hartford Ins. Co.,* 1 Dill. 392 ; *Transportation Co.* v. *Insurance Co.,* 6 Blatchf. 249 ; *Planters' Ins. Co.* v. *Comfort,* 50 Miss. 662. Acts which amount to an acceptance or a waiver may be proved, under the averments of the plaintiffs' declaration. *Kennon* v. *McRea,* 6 Port. 175 ; *Taunton Bank* v. *Richardson,* 5 Pick. 436. Whether there has been an acceptance of defective proof or a waiver of fuller proof may be left to the jury. Cases above cited.

The substance of the tenth plea is, that Dillard wilfully and fraudulently concealed from the defendant, in his answer to the fifteenth question in his proposal for insurance, that he had

made a proposal for insurance to the Equitable Life Insurance Company, which proposal had been refused.

The replication is, in effect, that he answered that he had been insured in the Equitable Life Insurance Company, but that his policy was forfeited; but that Yeiser, the defendant's agent, wrote the answer, "Insured in Equitable, $5,000;" that Yeiser, with full knowledge of all the facts, wrote the answer; that the answer so made was accepted by Yeiser as full, and was so considered by Dillard; that Yeiser delivered the proposal, including the answer to question 15, to the defendant, who, knowing the scope of the answer, and without requiring further answer, issued the policy.

The eleventh plea set up a wilful and fraudulent concealment of a proposal for insurance to the Continental company. The replication alleges that Yeiser, the agent, wrote the answers; and continues, in effect, as the replication to the tenth plea, except that it omits the averment of Yeiser's knowledge of the facts, or his being agent for this company.

The fifteenth interrogatory contained two inquiries: first, as to proposals; and, second, as to insurance in other companies. It was the duty of Dillard to have made truthful and full answers to both inquiries. The company esteemed the information sought, to be valuable. It was as much entitled to a disclosure as to proposals, as to insurance effected.

We will consider whether the replications obviate the pleas, as one question, keeping in view, so far as may be necessary, that portion of the replication to the tenth which is not contained in the answer to the eleventh plea.

The general question is, whether the allegation that Yeiser accepted the answer, as made and as written by him, to be full and complete, and the transmission of the application, with the question thus answered, and the issuance of the policy, are a waiver of the non-disclosure or concealment complained of. The defence arises on one of the stipulations in the policy, viz. : "That if the proposals, answers, and declarations, etc., upon

the full faith of which this policy is issued, shall be found to be fraudulent, or untrue in any respect, or that there is any wilful misrepresentations or concealments in said declarations, * * * answers, etc., then this policy shall be void."

It is necessary to comprehend what is such a concealment, in the sense of this stipulation, as will avoid the policy. We must exact of both parties good faith in their preliminary negotiations and in their contract. The insurance company proposes to take risks on lives, on certain conditions. These are set forth in printed papers, partly in blank, with which their agents are supplied. Applicants must conform to these conditions. The insurers, in effect, make known to the public that they are igno-; rant of the habits, employments, and bodily and mental condition of those who may desire to take out policies ; that they may determine whether they will take the risks offered at all, or, if taken, at what rate of premium, they must be furnished in each case with full information of all that is necessary to be known, as suggested by a series of questions. If, however, there shall be misrepresentation or wilful concealment, they will not be bound by the policy.

The insurance company consummates the contract on the basis of the responses to the questions. If the agent has fuller information, not written in the answers, it would be his duty to communicate it to his principal. The applicant must be understood as making his overture to the company on the faith of the disclosures in his application. If the company is misled by an agent, who takes the preparation of the paper into his own hands and makes mistakes or omissions, as in *Planters' Insurance Company* v. *Myers*, 55 Miss. 479, the company is estopped, because the fault is not with the insured. Yeiser took charge of filling up the application with the answers, and, therefore, as held when this case was in the Supreme Court of the United States, the answer to the fifteenth question, as made by Dillard to the agent, must be considered as if it had been written down in full, and had been in that form laid before the company for its action. The company must either accept the proposition

as thus presented, or reject it; or it may return it for a fuller answer.

If the applicant has omitted to answer any of the questions, the insurance company knows, *before it makes the contract*, that the information on which it usually acts is wanting, and it would be absurd to plead misrepresentation or concealment of the matters involved in the questions. In no sense could it be affirmed that the policy was issued on the basis of a misrepresentation or concealment. If the applicant omits or refuses to answer *one* question, and the risk is taken, it cannot be alleged as true, in law or morals, that the company has been misled, deceived, or imposed upon. With its eyes open, and with full knowledge, it has agreed with the applicant to insure his life, without any information on the subject suggested by the unanswered question. There has been no misrepresentation, for that cannot be predicated of silence. There has been no fraudulent or wilful concealment, with intent to deceive, for the insurer is advised beforehand that the other contracting party has declined altogether to answer. It does not at all differ from a negotiation in person between the insurer and insured, where the officers of the corporation, authorized to contract, put the question directly to the insured, "Sir, have you made application to any other company for insurance on your life?" and the reply is, "I decline to answer that question." In such case, it would not be seriously argued that the policy could be avoided by the allegation and proof that application had been made to the American Company, and the risk refused.

The inclusion of two or more inquiries in the same question is the same as putting each in separate interrogatories.

The concealment which vitiates the policy must be such as misleads, or deceives: such as a partial disclosure, omitting matters of importance, which, if disclosed, would make the answer full; as if the answer to a question about former sickness detail a slight illness, concealing a much more serious and recent sickness; as if the question be, whether the appli-

cant has ever been seriously hurt by an accident, and the answer be that an arm was broken ten years ago, when the truth was that a serious internal injury was received by a fall from a carriage.

In Mrs. Leflore's case, the matter concealed was an alleged serious injury on a railroad train. In these and other illustrations that might be readily given, the deceit consists in withholding from the insurer matters pertinent to the question, which the insurer ought to know, — matters without the statement of which the answer would not be full.

If, in answer to the fifteenth question, Dillard had said he had " made an application to the Continental company, which he had *withdrawn*," when the truth was, he had also made application to two other companies, which had been rejected, it would be a case of concealment which would avoid the policy, because the answer suggests that there was no objection to the risk, whereas two companies had declined to take it. The answer to this question is valuable to the insurer, as it opens the avenue to further inquiry, if the company desires to pursue the investigation.

We are of opinion that the omission to answer one branch of the fifteenth question is not a " fraudulent " and wilful concealment of the matter inquired about, in such sense as that thereby the policy is avoided. The difference is between a declension to answer altogether and a partial answer, which discloses in part, but withholds material and important matters which affect the question of whether the risk shall be taken at all, or may be an element in fixing the rate of the premium.

We have not been referred by counsel to any authority directly on the point, but we think that the conclusion reached is just and reasonable.

The exception taken to the four jurors is not tenable. Qualification is prescribed by sect. 724 of the Code. It is not shown that these persons did not have these qualifications. The statute does not erect a standard of education or learning.

56 MISS. — 18

The court instructed, for the plaintiffs, that notice of insufficient proof of death ought to have been given to Mrs. Mahone. But the defendant procured a charge, that if the notice was given to her husband, acting for her, with her consent, it would be good.

The case was fairly presented to the jury by the court, on all the controverted issues. There was conflicting testimony on most of them, especially as to whether Dillard had impaired his health by excessive use of ardent spirits, and whether he had made a true answer to the question as to his occupation.

The whole case, the rulings of the court, the relevancy and sufficiency of the testimony to support the verdict, were presented on the motion for a new trial ; most of these points we have already considered. The testimony was often conflicting ; in such cases this court is bound by the finding of the jury, unless it is against the great preponderance of the evidence.