ELIZABETH T. THIES v. MUTUAL LIFE INSURANCE CO. OF KENTUCKY.

No. 2287.

1.  Life Insurance—Payment of Premium—Assumption by Agent.

Where, in an action upon a life insurance policy, the company defends on the ground that the policy has been forfeited, by its terms, by the failure of the insured to pay a note given for premium, evidence is admissible to show an agreement between the insured and the company's agent, made with its consent, by which the note was made payable to the agent, and was to be his property, he assuming the payment of the premium to the company, which had no interest in the note.

2.  Same—Declarations of Insured.

In an action upon a life insurance policy, proof of a statement made by the insured husband after the issuance of the policy to his wife as the payee, contradictory of statements made in his application therefor, is not admissible as against the beneficiary.

3.  Same—Defective Answer of Applicant—Estoppel.

Where, in an application for a life insurance policy, the question "For what have you sought medical advice during the past seven years?" was answered "No," the company, after accepting such application and issuing policy thereon, is not entitled, in an action on the policy, to claim that the answer was false, and to have submitted to the jury the question as to what was meant by such answer.

APPEAL from Tarrant.   Tried below before Hon. W. D. HARRIS.

*F. M. Brantley*, for appellant.

*Halsell, Parker & Harris*, for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed by appellant on the 19th day of February, 1894, to recover from appellee $1000 on a policy of insurance executed and delivered by it on the life of Charles Thies, the husband of plaintiff, bearing date September 18, 1893, and also for twelve per cent damages allowed by the statute for refusing to pay loss, and for $200 attorney's fees.

The defendent plead (1) the general issue, and (2) specially that the policy was issued and based on the written application of Charles Thies, dated September 18, 1893, wherein he agreed that the answers given by him to the agent and medical examiner should be true, and should be the basis of the contract of insurance; that in answer to the question of defendant's agent, J. R. Puckett, "Are you in good health?" he answered, "Yes;" and in answer to the question of defendant's medical examiner, "Have you now any disease or diseases, if so, what?" he answered, "No;" and to the question, "For what have you sought medical advice during the past seven years?" he answered, "No;" and to the question, "Have you an habitual cough?" he answered, "No;" and in answer to the question, "Have you ever had consumption?" he answered, "No;" each and all of which answers, the defendant avers, "were untrue and fraudulent misrepresentations, known to be such by said Thies at the time they were so made, and all of which facts were unknown to defendant at the time; that said Thies at the time he made

said answers was diseased, had consumption, had habitual cough, had sought medical advice often within seven years next before said statement, to ascertain what was his disease, and had been told by physicians that he was diseased, each and all of which facts he well knew when he made his application as aforesaid; that said policy of insurance was issued by defendant to said Thies on the faith of the truth of the representations made as aforesaid; that said policy was obtained by the false representations of said Thies as aforesaid, and his said warranty, and on account of said false and fraudulent representations and warranty, said policy is invalid and void and not binding on defendant; (3) that Charles Thies executed his promissory note to J. R. Puckett, dated September 18, 1893, for $31.03, due 45 days after date, for the first annual premium on said policy, and at the maturity thereof the said Puckett demanded payment thereof, and plaintiff failed to pay same or any part thereof; and that by the terms of said policy it is provided that if any note given for said policy shall not be paid on or before the day on which it becomes due, at the office of the company in the city of Louisville, Ky., or to an agent producing the receipt of the company, signed by the president and secretary, the policy shall then become void and insurance cease, without notice to the insured or the parties interested in the policy, or holder thereof; and (4) that because of the failure to pay said first premium note at maturity, it was agreed by and between the defendant company and Charles Thies and plaintiff that said policy should be cancelled and held for naught.

The plaintiff filed a special exception to the second paragraph of the answer, because of indefiniteness, in that it failed to state what disease he had at the time of the application, and from whom, when and for what diseases he had sought medical advice within the seven years next preceding the application. This exception was overruled, and error is assigned on the ruling.

The plaintiff also replied that J. R. Puckett induced Charles Thies to apply for and accept the policy, by agreeing that he, Puckett, would settle the first premium with the company and take applicant's note for it, payable in a suit of clothes, and that the first year's premium should thus be considered as cancelled and paid to the company, and that Charles Thies executed and delivered said note to Puckett as agreed on; that this the company knew and accepted Puckett for the premium and released Thies from the payment thereof and delivered the policy, and that it is estopped from setting up the nonpayment of said note as a forfeiture of the policy; that it had waived its right to claim said forfeiture by reason of nonpayment of said note.

Plaintiff also, in the fifth paragraph of her reply, says, in substance, that if any statement contained in Charles Thies' application is incorrect or untrue, which she denies, then the defendant and its agents Puckett and the medical examiner knew of the incorrectness thereof, and failed to call the attention of Charles Thies thereto, that he might correct the same, and that Charles Thies was wholly ignorant of the incorrectness

of any such statement, and said Puckett ¬with full knowledge thereof accepted said premium note and delivered the policy to Charles Thies.

To this fifth paragraph the court sustained a special demurrer, upon the ground that knowledge on the part of Puckett and the medical examiner, and ignorance on the part of Thies of any incorrect or false statement contained in the application, would not affect the warranty of their truth, nor avoid a forfeiture, if any were untrue. To this ruling the plaintiff excepted, and assigns error.

The court submitted special issues, and the verdict of the jury thereon is as follows:

"Question 1. Was the answer of Chas. Thies when he answered 'Yes' to the question in the application, 'Are you in good health,' untrue at the time he answered the same? Answer. 'No.'

"Question 2. Was the answer of Chas. Thies when he answered 'No' to the question in the application, 'Have you now any disease or disorder,' untrue at the time it was answered? Answer. 'No.'

"Question 3. Was the answer of Chas. Thies when he answered 'No' to the question in the application, 'For what have you sought medical advice during the past seven years,' untrue at the time it was answered? Answer. 'Yes.'

"Question 4. Did Chas. Thies intend by his answer 'No' to said question to state that he had sought no medical advice for any disease during seven years next preceding the time of the application? Answer. 'Yes.'

"Question 5. Was the answer of Chas. Thies when he answered 'No' to the question in the application, 'Have you an habitual cough,' untrue at the time it was answered? Answer. 'No.'

"Question 6. Was the answer of Chas. Thies when he answered 'No' to that part of question 15 of the medical examiner's report in the application wherein he was asked in effect, 'Have you ever had any consumption,' untrue at the time he answered it? Answer. 'Yes.'

"Question 7. Had Chas. Thies ever had any consumption prior to the time of signing the application for insurance? Answer. 'Yes.'

"Question 8. Did Chas. Thies have consumption at the time he signed the application for insurance? Answer. 'No.'

"Question 9. Was the note given for the part payment of premium, that is, the note dated September 18, 1893, for $31.03, due 45 days after date, ever paid by Chas. Thies or by any one for him prior to his death? Answer. 'No.'

"Question 10. Was there any contract for extension of time for the payment of the $31.03 made by J. R. Puckett or by W. R. Parker, representing the defendant or representing said Puckett; and if so, when was it made, and for what length of time was it made, and was the time for which it was executed out before the death of said Chas. Thies? Answer. 'Yes; there was a contract 21st December; extension 12 days. Yes; the extension was out before the death of Mr. Thies.'

"Question 11. Was there prior to the death of Chas. Thies a sur-

render of the premium note of $31.03 by J. R. Puckett or by his attorney to Chas. Thies, and did Chas. Thies, in consideration of its surrender, give or cause to be given an order upon A. J. Anderson for the policy, intending at the time to no longer claim a right to the same? Answer. 'No.'

"Question 12.  Was there an order ever given by Chas. Thies to Mr. Fry for the delivery of the insurance policy to the defendant or any one for it, with the intention at the time that the same should cease to be in force; and if so, did the defendant, or any one acting for it, receive such order and agree to surrender the note, and did such party notify Chas. Thies of such agreement?  Answer.  'No.'

. "Question 13.  Was the order, if any, given by Chas. Thies or any one for him, for the policy, so given for the purpose or under an agreement that it would be held by the defendant or any one representing it only as security for the note for $31.03, and until the same should be paid, and then returned?  Answer.  'No.'

"We, the jury, find that the plaintiff is the owner of the policy sued on, and that it has never been paid.  We find the principal thereof to be $1000, and the interest thereon from the institution of this suit to the present time to be $63, and 12 per cent of the principal to be $120. We find that $150 is a reasonable amount for attorney's fees for bringing and prosecuting this suit.  And we, the jury, find that Chas. Thies, on whose life the policy of insurance sued on was issued, signed the application for insurance read in evidence, dated 18th September, 1893, and we find that said application in the first part thereof contains the following statements: 'I agree that the answers given herewith to the questions of the agent and examiner, which I declare and warrant to be true, shall be the basis of my contract with the company.'  And we find that there were and are the following questions and answers thereto in said application: 'Are you in good health?'  'Yes.'  'Have you now any disease or disorder; if so, what?'  'No.'  'For what have you sought medical advice during the past seven years?'  'No.'  'Have you an habitual cough?'  'No.'  'Have you ever had any consumption?' 'No.'  And we find that the policy of insurance sued on was issued upon said application.  And we find answers to the questions 1, 2, 3, 4, 5, 6, 7, 8, and to questions 9, 10, 11, 12, and 13, as appears by our answers written after each one of said questions."

Upon motion of defendant, the court rendered final judgment for it on said verdict, basing the judgment, as recited therein, on the jury's answers to questions 3, 4, 6, 7, 9, and 10.

Appellant's third assignment of error, complaining of the court's action in overruling her special exception to the second paragraph of appellee's answer, should probably have been sustained (1 Chitty on Pleading, 234); but in view of our opinion on the question and answer referred to in the twenty-first assignment of error, upon which the breach of warranty here attempted to be set up is based, we deem it unnecessary to discuss the grounds of error contained in this assignment, further than

to say that, so far as it attempts to set up that Charles Thies had not truthfully answered the question, "For what have you sought medical advice during the past seven years?" it fails to state any defense whatever, as we hold that the answer to that question was waived by the company, as will more fully appear in the latter part of this opinion.

The seventh and eighth assignments of error are well taken, because if defendant's agent induced Charles Thies to apply for and accept the policy by agreeing to take his note payable to said agent, and thus, with the consent of his company, to settle the first year's premium, and the company, in pursuance of such arrangement, issued the policy and placed it in the hands of the agent for delivery, and it was delivered by him, the company is bound by the contract of its agent; and plaintiff should have been permitted to prove such contract with the agent, and that the note belonged to the agent, or that the company had no interest therein. Any evidence tending to establish the allegations on this point as set out above should have been admitted. We have grave doubts whether the note in question is the kind of note referred to in the policy, the failure to pay which will work a forfeiture.

The eleventh assignment will have to be sustained, because Parker's testimony that Charles Thies admitted to him that he had been, prior to the date of his application, examined for life insurance and was rejected, and that he therefore considered the policy as void, the admission being made by Charles Thies after the issuance and delivery of the policy, and being contradictory of his answers as contained in the application, are not admissible against the wife, who is the payee in said policy, in a suit upon the same, as Charles Thies was not a party to the contract and had no beneficial interest therein, the amount of insurance being payable to her, and the law in this State securing the same to her free from the debts of her husband. Insurance Co. v. Applegate, 7 O. St., 292; Insurance Co. v. Haney, 10 Kan., 535.

The fifteenth assignment of error is well taken. It was material to prove, on the issue as to whether he had ever had consumption, when Charles Thies sought medical advice from Dr. Broiles, whether before or after September 18, 1893, the date of the application. Dr. Broiles' evidence was indefinite, and he was unable to state whether it was before or after the application was made. Mrs. Thies offered to testify that she knew and remembered the occasion of her husband visiting and consulting Dr. Broiles at the time it occurred; that her husband informed her of the visit at the time it occurred; and that the visit and consultation with Dr. Broiles occurred only a few days before deceased took his bed with his last sickness; which tended to establish that the visit was after the application was made, and would have tended to rebut the unfavorable conclusion sought to be drawn from Dr. Broiles' evidence. The evidence was not competent to prove any conversation between the parties, but only the fact that the occurrence of consulting Dr. Broiles took place at a particular time, and for this purpose, so far as indicated by the bill of exceptions, it was competent.

The twenty-first assignment of error must be sustained, because the answer "No" to the question, "For what have you sought medical advice during the past seven years?" is an imperfect answer, or, at least, is one of such doubtful and uncertain meaning as to require explanation, and strongly indicates that the answer was not intended for that question, but was written there by mistake. In either view of the case the company's duty was plain; for, as the contract was based upon these answers as written, it was the company's duty to reject the application or return it for explanation, and failing to do either it has no right to insist now upon a construction which would make the contract more burdensome on the applicant or beneficiary than the strict legal interpretation of the answer would require. Suppose the answer "Yes" had been written down instead of "No." The meaning would have been equally as incomprehensible, but no more so. It is not a question that can be perfectly answered by yes or no. Therefore the answer "no" was imperfect, and was so uncertain of meaning as to suggest further inquiry on the part of the company, and no defense can be predicated on it.

Submitting question No. 4 to the jury, inquiring as to what the applicant meant by answering "No" to said question was error, because if the company was satisfied to pass his application upon an imperfect answer, and to sign, execute and deliver the contract of insurance based thereon, it will be conclusively presumed, after the death of the party and the loss has occurred, to have waived the answer to such question, and it would be estopped from setting up any defense based upon such question and imperfect answer. Insurance Co. v. Raddin, 120 U. S., 183; Insurance Co. v. Willis, 60 Fed. Rep., 236, 8 Cir. Ct. App., 594; Insurance Co. v. Luchs, 108 U. S., 498; Hall v. Insurance Co., 6 Gray, 185; Insurance Co. v. McCulloch, 21 Ohio St., 176; Insurance Co. v. Mahone, 56 Miss., 180; Carson v. Insurance Co., 14 Vroom, 300, 15 Vroom 210; Insurance Co. v. Kepler, 106 Pa., 28.

Justice Gray, in delivering the opinion of the Supreme Court of the United States in Insurance Co. v. Raddin, supra, says: "Where an answer of the applicant to a direct question of the insurers purports to be a complete answer to the question, any substantial misstatement or omission in the answer avoids a policy issued on the faith of the application. * * * But where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial."

It would be unjust to allow any person or corporation to assume a risk of this character, based upon written questions and answers exclusively, where the answer is doubtful of meaning, or where it has none at all, and collect the premiums, perhaps, for years, and when they are called upon to perform their part of the contract to escape liability by claiming that they were misled by a dubious or imperfect answer contained in the

application, when the party who made it and who had the right to retract it or explain it, is dead. They have the right to require of the appellant a full, clear and certain answer to every and all questions they see fit to propound, and to hold the applicant and beneficiaries to the strict rules of warranty of the truth thereof, and they need not accept an imperfect, defective or unintelligible answer; but if they accept such and execute a contract of insurance based thereon, they cannot escape liability by reason of such uncertain answer, but will be held in law to have waived answers to such questions.

The application in this case makes the answers as therein given the basis of the contract. It is as follows: "I agree that the answers given herewith to the questions of the agent and examiner, which I declare and warrant to be true, shall be the basis of my contract with the company." If it is the basis of the applicant's contract with the company, we see no reason why it should not also be considered the basis of the company's contract with the applicant; and as it based its contract upon an imperfect and uncertain answer, it is too late, when sued thereon, to ask that a jury may determine as a matter of fact what the applicant's real answer was, or what was meant by the answer as written down, but the meaning must stand on the legal interpretation of the writings which constitute the contract, and this is a question of law for the court. In this instance, therefore, the court should not have submitted questions 3 and 4 to the jury, but should have considered that the answer to the question so defectively answered had been waived by the company.

In view of the disposition we make of the foregoing assignments of error, we regard it unnecessary to pass upon other assignments made, as they will not be likely to arise on another trial.

For the errors herein pointed out, we reverse the judgment herein and order that the cause be remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*

Delivered April 24, 1896.