John F. Devine, Administrator, Defendant in Error, v. Federal Life Insurance Company, Plaintiff in Error.

## Gen. No. 15,324.

1. MUNICIPAL COURT—*practice on review.* The practice and procedure in the Appellate Court in reviewing judgments of the Municipal Court is the same as that which prevails in reviewing judgments brought to the Appellate Court from other courts and any provisions of the Municipal Court Act to the contrary are unconstitutional and void as in contravention of the constitution which requires uniformity in practice and procedure.

2. INSURANCE—*when delivery of policy established.* If a policy is delivered it becomes effective notwithstanding the first premium has not been actually paid if it is given into the possession of the insured pursuant to a plan sanctioned by the company by which the insured gave his note for the first premium to the soliciting agent whose property such note became.

3. INSURANCE—*when company estopped to deny payment of premium.* *Held,* under the evidence in this case, that the company was estopped to deny the payment of the initial premium by the insured because of the recital in the policy as follows: "In consideration * * * and of 30 and $81\frac{1}{100}$ dollars in advance, hereby insures" etc.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. JOHN W. HOUSTON, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opnion filed October 20, 1910. Rehearing denied November 3, 1910.

CHARLES A. ATKINSON and HARRY C. LEVINSON, for plaintiff in error.

CHARLES R. NAPIER, for defendant in error.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The plaintiff as administrator *de bonis non* of the estate of Ralph W. Chance, deceased, brought suit against the defendant to recover $1,000 claimed to be due on a policy of life insurance issued to the deceased Chance in his lifetime. The important question presented for our determination is wheth-

er the policy had been delivered by the defendant and accepted by the deceased in his lifetime and the first premium paid. The defendant's contention is that the policy had not been delivered to the insured nor to any one for him, that it had never been accepted by the insured, that no premium nor any part of the premium had ever been paid by the insured during his life, and that the policy was never in force.

There is a preliminary question raised by plaintiff's counsel, who urged that the defendant "having saved no exception below to the action of the trial court in overruling its motion for a new trial, its motion in arrest of judgment and the entry of judgment, there is no question before this court for review;" that paragraph 8, section 286, chapter 37, Hurd's Ill. Rev. Stat. 1908, in so far as it seeks to make a rule for the disposition of a writ of error from the Appellate Court to the Municipal Court different from the rule where the writ of error is to the Circuit, Superior or County Court, is unconstitutional and void.   In Clowry v. Holmes, 238 Ill. 577–580, it is said: "To have a different practice in the Appellate Court in cases brought to that court from the Municipal Court of Chicago by writ of error, from that governing the practice in cases brought to that court for review from the other courts of record in this State by writ of error would destroy the uniformity in the proceedings and practice in that court required by the constitution."   Whether the provision in paragraph 8, section 286 of chapter 37, the Municipal Court Act, which provides that no exceptions to the ruling and decisions of the Municipal Court upon the trial of cases of the fourth and fifth classes referred to in the first part of said section 286, shall be necessary to the right of either party to a review of such rulings and decisions in the Supreme Court or Appellate Court upon their merits is in this respect in contravention of the constitution, involves a constitutional question which can be properly raised in the Supreme Court.   In Clowry v. Holmes, *supra*, it is said: "Neither is there anything in our judgment in the contention that the case came through the Appellate Court, which Court had no power to pass upon a constitutional question, as the

constitutional question here involved did not arise until after the case reached the Appellate Court."

Upon the main question as to whether the policy in controversy was ever in force, most of the material facts are not in serious dispute. Upon May 4, 1907, the defendant issued the policy in question. It provides that the defendant "in consideration of the written and printed application for this policy which is hereby made a part of this contract, and of Thirty $^{80}/_{100}$ dollars in advance, hereby insures the life of Ralph W. Chance, hereinafter known as the Insured, for one year from the date hereof, all premiums being duly paid, in the amount of one thousand dollars, payable at its office in the City of Chicago, on receipt of satisfactory proofs of the death of the Insured within said term, to the Insured's executors, administrators or assigns." The policy is dated May 4, 1907, and is duly executed by the officers of the company. Among the "Options and Provisions" which are stated to "form a part of this contract," it is provided that: "Failure to pay any premium or note or interest thereon when due will forfeit without notice this policy and all payments made thereon except as herein provided." And also that "A grace of thirty days will be allowed for the payment of any premiums due hereon except the first, and during such time this policy will continue in full force and effect." The application for the policy made by the insured bears an endorsement as follows: "This risk approved and recommended by Robert J. Jeffs;" and underneath the signature of said Jeffs is the following: "Signature of person or persons actually soliciting and securing this application." In a letter from the president of the defendant Company dated October 4, 1907, said president wrote as follows:

"For your information I have to say that for the annual premium on said policy Mr. Chance gave his note to Robert J. Jeffs for $30.80. The note was past due at the time of his death and no part or portion of said note was paid at any time. The policy was returned to us not taken. The policy itself provides, 'Failure to pay any premium or note, or interest thereon when due, will forfeit, without notice, the pol-

icy and all payments made thereon excepting as herein provided.'

At the same time that Mr. Chance gave his note to Robert J. Jeffs for said premium he gave two other notes to Mr. Jeffs, one for $50 and one for $10.14. On May 11th Mr. Chance paid Mr. Jeffs $5.14, on May 15th he paid him $2.50, and on May 22nd he paid him $2.50 more, making a total of $10.14. Said payments as made were applied upon said note of $10.14 and canceled the same in full.

No part or portion of said note of $30.80 or of said $50 note were paid at any time by Mr. Chance or any one for him.

I send you this information purely as a matter of courtesy and in order to convince you that said policy was never in force at any time.

Respectfully,
Isaac Miller Hamilton,
President."

After the policy was issued, as the president of the defendant company testified, "it was sent to Mr. Jeffs at his place of business in this city in order that he might collect the premium on it."

The note so given by the deceased to Jeffs is as follows:

"Chicago, May      , 1907.

For value received I promise to pay to the order of Robert J. Jeffs Thirty and $^{80}/_{100}$ Dollars in installments as follows, to-wit: $2.50 on Wednesday, May 29, 1907, and $2.50 on each Wednesday thereafter until the entire amount be fully paid.

Should any of the above installments not be paid by the time due, all unpaid portion of this note becomes due immediately, with interest at the rate of six per cent per annum after maturity. And to secure the payment of said amount I hereby authorize irrevocably, any attorney of any Court of Record to appear for me in such court, in term time or vacation, at any time hereafter, and confess a judgment without process in favor of the holder of this note for such amount as may appear to be unpaid thereon, together with costs and attorney's fees, and to waive and release all errors which may intervene in any such proceedings and consent to immediate execution upon such judgment, hereby ratifying

and confirming all that my said attorney may do by virtue hereof.

R. W. Chance.

Residence 4761 Madison Ave.
Place of business 1408 Michigan Ave."
Endorsed as follows:
    "Pay to the order of
Consolidated Agencies Company
    Without recourse on me
        Robt. J. Jeffs.
Pay to the order of Federal Life Insurance Company
            without recourse on us.
    Consolidated Agencies Company, by Robert J. Jeffs."

It appears from the evidence that the last endorsement by the Consolidated Agencies Company to the defendant was made June 3, 1907, after the death of the insured. There is evidence tending to show that the interest on this note was paid by the insured to Jeffs. The application of the insured for this policy was obtained by one Baker, who was employed by and associated with Jeffs in the business of writing life insurance and making loans, and as such employe and agent was introduced by Jeffs to the defendant's president and other officers as one who was to work for them in Mr. Jeffs' employ. He testifies over defendant's objection that a plan was formed by which "where a man got insurance the premium was paid by Mr. Jeffs, and also where a cash loan was made in addition, the policy remained in Mr. Jeffs' hands or with whomsoever they were doing business with. The policy and premium receipt remained with the man who gave the credit." The witness further states that "Mr. Jeffs was to settle the insurance premium with reference to his company and put the policy in force, accepting a note from the client to be paid and strung along over various periods under that individual arrangement." The evidence tends to show that the deceased executed and delivered to Jeffs notes for the amount of the premium loaned or advanced by Jeffs and notes for inspection and interest charges. A receipt was introduced in evidence dated May 22, 1907, tending to show that Jeffs by one Clisby, secretary of the Consolidated Agencies Company, "Received

from R. W. Chance two and $^{50}/_{100}$ dollars on account of note."
Jeffs is said to have been president of the Consolidated Agen-
cies Company.   He was employed by the defendant under
a written contract as its general agent for "procuring and ef-
fecting applications for insurance that will be satisfactory to
it and for the purpose of collecting and remitting premiums
on such insurance," and performing other duties.    The wit-
ness Baker states further that acting as agent in the employ
of Jeffs he received instructions from Jeffs to the effect that
in soliciting insurance he should tell the prospective policy
holder that when such policy holder's note was accepted by
Mr. Jeffs his policy would be in force a year, since the
policy would not be issued until the insured had been exam-
ined and the company had accepted the risk, and would
remain in Mr. Jeffs' hands until the debt of the insured to
Jeffs had been paid, and that the witness stated this to
Chance, the insured, when he obtained the latter's application
in evidence.

In behalf of the defendant the deposition of Robert J.
Jeffs was introduced in evidence.   He testifies that the policy
in question was issued and mailed to him by the defendant
about May 17, 1907; that it was never delivered to the in-
·sured nor to any one for him, and that the witness returned
the policy to the defendant about June 3, 1907.   The witness
testifies that he "took a conditional note from said Ralph W.
Chance as evidence of an extension of time within which to
pay the premium upon the installments as specified in the
note; but that the note was not taken in payment of the
premium."   This is of course a conclusion of the witness rath-
er than evidence as to the fact.

Upon the facts appearing in evidence the material question
is whether at the time of his death the insured was in default
in payment upon the first premium.   It is insisted by plain-
tiff's counsel that he was not so in default.   By the terms
of the so-called premium note in question, the insured was to
pay $2.50 on Wednesday, May 29, 1907.   In case of his fail-
ure to pay such instalment the whole note by its terms be-
came payable not to the company but "to the order of Robert

J. Jeffs," by whom the credit was given. The insured had been informed when he made his application for the insurance and by authority of Jeffs himself, that the policy would be in force for a year as soon as the note of the insured was accepted by Jeffs. He understood that his policy would be delivered to Jeffs for him and would remain in Mr. Jeffs' hands as security to Jeffs for the payment of the note given for the money which the insured owed on his note to Jeffs. He was so informed by the agent who solicited his application. Acting upon this information, he had given his notes to Jeffs and paid a year's interest thereon in advance. Jeffs was the general agent of the defendant company authorized by a written contract to procure applications for insurance and also to collect and remit premiums on such insurance. When the company delivered the policy in question to its agent, Jeffs, the latter retained the policy and the premium receipt in accordance with the plan agreed upon. There is testimony tending to show that the company by its officers understood and acquiesced in this plan for procuring insurance, and regarded the plan as succeeding "because the applications were coming in there very fast from Jeffs' office." Such being the evidence, what is said in Reppond v. National Life Insurance Co., 101 S. W. Rep. 786–788, is in point: "By the transaction as here stated the notes became the individual property of Adams (the agent) and were not subject to the forfeiture provided for in the policy for the non-payment of a note given for a part of the premium. The fact that the company acquired the notes from Adams gave it no more right than Adams had. Pythian Life Ins. Co. v. Preston, 47 Neb. 374; Union Life Ins Co. v. Parker, 66 Neb. 395; Thies v. Mutual Life Ins. Co., 13 Tex. Civ. App. 280." To the same effect is Buckley v. Citizens' Ins. Co., 188 N. Y. 399–402; Mut. Life Ins. Co. v. Allen, 212 Ill. 134–137. In this last cited case it is said: "There was evidence tending to show the company recognized the custom of its agents to take notes of the assured for the first annual premium payable to the agent, and that the Company in such cases would look to the agent to pay its percentage of the total premium in thirty

or sixty days.   *   *   *   Under this state of case, the Court could not say as a matter of law that the company might insist as against the policy holder, that there had been no payment of the premium on the policy." Of like character and effect are Thum v. Wolstenholme, 21 Utah, 447–461; Home Ins. Co. v. Curtis, 32 Mich. 402–405.

It is further urged that in the case at bar the defendant is estopped by the language of the policy from denying payment of the first premium. This language is hereinabove quoted. It recites that the company "in consideration   *   * * and of thirty and $^{80}/_{100}$ dollars in advance hereby insures the life of Ralph W. Chance," etc. We are inclined to concur in the contention that this language, together with the proof tending to show the policy was delivered to Jeffs in pursuance of the plan by which the latter gave credit to the insured for the first year's premium, he taking the note of the insured to reimburse himself, may properly be deemed an acknowledgment of receipt of the amount of premium named as paid in advance, and in the absence of fraud estop the company from denying such payment. Helbig v. Citizens' Ins. Co., 120 Ill. App. 58–61. See also Kilborn v. Prudential Ins. Co., 99 Minn. 176–179.

There are other questions presented in the briefs and elaborately argued. But inasmuch as the conclusions above stated are controlling, we deem it unnecessary to extend this opinion by considering at length the points referred to. For the reasons indicated the judgment of the Municipal Court will be affirmed.

*Affirmed.*